FILED
JUN 29 2005
ARLEN B. COYLE, CLERK
BY_____ Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

HEATH WILLIAM KNIGHT, et al.
    PLAINTIFFS

vs.                                                      CAUSE NO. 4:01CV223-P-B

KIRBY INLAND MARINE, INC., et al.
    DEFENDANTS

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs, Heath Knight and Thomas Ingerman respectfully request that this Court deny Defendants' Motion for Summary Judgment and allow Plaintiffs to proceed to trial on the merits of their cases.

### I. Factual and Procedural Background

On April 23, 2001, Plaintiffs filed this suit against Defendants after they were diagnosed with cancer that they allege was caused by their exposure to chemicals, including benzene, on various barges owned and operated by Defendants.

Heath Knight testified that he regularly smelled chemicals while performing his Tankerman duties during his employment at Kirby Inland Marine. (See previously filed Knight Depo. pp. 52, 122-5). In addition to breathing the vapors, he had direct skin contact with various chemicals due to leaking equipment. In two separate accidents, Mr. Knight was actually doused in chemical product while operating valves and hoses on the boats. (Knight Depo. pp. 82, 114). Mr. Knight also testified that his personal protective equipment did not properly fit to protect him from the hazardous chemicals he handled

day to day. (Knight Depo. p.57). Mr. Knight was diagnosed with Hodgkin's Lymphoma in August 1998. (Knight Depo. p. 29)

Thomas Ingerman testified that his exposure to the chemicals he worked with was commonplace during his nine year employment as a Tankerman on Defendants' vessels. (See previously filed Ingerman Depo. pp. 119-122). Mr. Ingerman was involved in six acute exposure accidents where he inhaled the vapors or had chemicals on his clothes and skin. (Ingerman Depo. p. 83). He testified that the transfer equipment frequently malfunctioned and that his personal protective equipment was inadequate. (Ingerman Depo. pp. 62, 107). Mr. Ingerman was diagnosed with bladder cancer in 1999. (Ingerman Depo. p. 58).

Defendants' Motion in Limine to exclude Plaintiffs' medical causation expert, Dr. Barry Levy, was granted on March 14, 2005. Defendants now move this Court to order Summary Judgment on Plaintiffs' claims due to the lack Dr. Levy's testimony concerning causation. This response in opposition follows.

## II. Summary Judgment Standard

The purpose of summary judgment is to evaluate the proof to determine if a trial is warranted. Matsushita Elec. Indus. Co. v. Zenith Radio Corp. 475 U.S. 574, 587 (1986). Where the record taken as a whole could lead a rational jury to find for the nonmovant, there is a genuine issue for trial. Id. According to the Federal Rule of Civil Procedure 56(e), a motion for summary judgment should not be granted if plaintiffs can "set forth specific facts showing that there is a genuine issue for trial." In this case, there is sufficient evidence of a factual dispute over the exposures and competing expert opinions regarding causation that should be resolved by a jury. "Summary judgment will

not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). Thus, Summary Judgment is inappropriate where there are genuine issues of material fact when evidence is viewed in the light most favorable to the nonmovant. Fed. R. Civ. P. 56(c), see United States v. Diebold, Inc., 369 U.S. 655 (1962)

### III. Causation Evidence

#### 1. Expert Testimony

Plaintiffs present their testimony of chemical exposures incidents, the testimony of their expert Dr. Vernon Rose, and the expert report of Don Green. Dr. Vernon Rose is an Industrial Hygienist who evaluated the extent of the chemicals that the Plaintiffs came into contact with while working on Defendants' boats. Dr. Rose found that the level of benzene that Plaintiffs inhaled exceeded the safe level of exposure for this chemical. (Rose Depo. pp. 63-68). Don Green is a marine expert who has evaluated the safety standards that Defendants maintained and the condition of the tank barges. He found that Defendants failed to provide a safe work environment and that the vessels where Plaintiffs had contact with chemicals were unseaworthy. (Exhibit 1).

Plaintiffs' remaining experts demonstrate that Defendants caused their employees to work in a hazardous environment with poorly maintained equipment and that permitted toxic chemicals to permeate the air and leak onto the workers' bodies. The record establishes that both Plaintiffs worked with mixtures containing benzene, a known carcinogen, which they frequently smelled. If one is able to detect benzene, he is overexposed because the odor threshold is greater that than the safe level recommended

by OSHA standards. (See previously submitted Rose Report p. 4).

Furthermore, Plaintiffs have numerous statistically significant epidemiological studies that show a causal relationship between benzene and other organic solvents and their respective cancers. The Fifth Circuit has noted that "Undoubtedly, the most useful and conclusive type of evidence in a [toxic tort case] is epidemiological studies." Brock v. Merrill-Dow Pharmaceuaticals, Inc., 874 F.2d 307, 311 (5th Cir. 1989).

### 2. Dr. Levy's Methodology is Reliable

Plaintiffs request that this Court permit Dr. Levy to testify as to the causation of their cancers because his credentials, methodology and opinions exceed the standards set forth in Daubert and in the Federal Rules of Evidence. Based on the factual information provided by Plaintiffs, Dr. Rose, and Don Green, Dr. Levy was able to scientifically link the chemical exposures to Plaintiffs' respective cancers. This Court has rightfully taken its "gatekeeper" role seriously, yet has overzealously stricken an expert that duly passes muster under every test to evaluate the reliability and relevance of his opinion. The substantial record regarding Dr. Levy, which includes three volumes of his depositions, his report, affidavit, and exhaustive examination during the evidentiary hearing reveal that his testimony fulfills the goals envisioned in Daubert of relevance and reliability.

Once the threshold of methodology has been met, the gatekeeper has satisfied its obligation and should permit the expert to continue. The court in Moore v. Ashland Chemical noted that the plaintiff must show that his expert's conclusions are scientifically reliable, which "requires some objective, independent validation of the expert's methodology." 151 F.3d 269, 276 (5th Cir. 1998). Dr. Levy's methodology has been validated by the most independent and theoretically objective scientist available, the

Defendant's own expert, Dr. Gori. Dr. Gori, repeatedly admitted that Dr. Levy used sound and generally accepted methodology based on epidemiological principles. (Transcript of Daubert Hearing, Vol. 2 of 2, Dec. 21, 2004, p. 276)(Exhibit 2).

The <u>Daubert</u> hearing revealed that Defendants take issue with Dr. Levy's conclusions and not his methodology, which is beyond the scope of such a hearing and should be addressed at trial. In setting forth guidelines for trial judges, the Supreme Court in <u>Daubert</u> states that "The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 595 (1993). Dr. Levy has repeatedly and thoroughly supported and explained his methodology and demonstrated that it is generally accepted in the scientific community as well as in the Fifth Circuit.

## Conclusion

Based on the expert testimony of Dr. Rose and Mr. Green, Plaintiffs can demonstrate that Defendants' hazardous working environment caused both Plaintiffs to suffer extensive exposure to toxic chemicals. Plaintiffs encountered dangerous levels of these chemicals by accidents, leaking equipment and poor operating procedures, which more likely than not caused their cancers. Moreover, Plaintiffs urge this Court to admit Dr. Levy's reliable expert testimony of medical causation. The testimony of their experts and the wealth of statistically significant epidemiological studies present a genuine issue of material fact that precludes the order of summary judgment against Plaintiffs.

By: *[signature]*
MIGNON ANGELETTE GILL
SBN: 24029573
J. ROBERT DAVIS
SBN: 00788859
LAW OFFICES OF J. ROBERT DAVIS, L.L.P.
440 Louisiana, Suite 1930
Houston, Texas 77002
Tel: (713) 425-5255
Fax: (713) 425-5355

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was forwarded to all counsel of record on June 28, 2005.

*[signature]*
Mignon Angelette Gill